RECEIVED
IN LAKE CHARLES, LA

APR 22 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **KIMBERLY JOURDAN** | : | **DOCKET NO. 08-1276** |
| VS. | : | **JUDGE TRIMBLE** |
| **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Kimberly Jourdan was employed by JP Morgan Chase as a bank teller on April 23, 2001. She elected to participate in a long term disability plan offered by her employer through Hartford Life and Accident Insurance Company ("Hartford"). Mrs. Jourdan alleges that due to pain caused by rheumatoid arthritis and fibromyalgia, as of June 13, 2007, she is unable to perform her job duties; thus, she filed a claim for long term disability benefits alleging to be disabled as of that date. On March 18, 2008, Hartford denied Mrs. Jourdan's claim for benefits.

According to comments from Hartford's "Summary Detail Report"[1] the basis for denial is

> an inconsistence [sic] of medical records during the period of illness for DOL of 06/13/2007 through LTDBED of 12/28/2007. EE was seen once in 7/07 and was not seen until 1/29/08 by a medical provider. . . . No additional objective exam findings provided by Dr. Holly Jones, Rheumatologist supporting the inability to perform her job duties of sitting and fingering during the elimination period of 06/13/2007 through 12/27/2007. Per policy provisions, EE needs to be under the Regular Care of Physician during the Elimination Period. At this time, will need to deny claim since medical information on file does not support a functional impairment that would prevent EE from performing her occupation of sitting and fingering during her elimination period from 06/13/2007 through 12/27/2007.[2]

---

[1] Rec. #000318.

[2] *Id.*

Mrs. Jourdan administratively appeal Hartford's denial of her claim. The final appeal was denied on June 24, 2008. Mrs. Jourdan filed the instant lawsuit in order for this Court to review Hartford's decision to deny her claim for benefits.

## LAW AND ANALYSIS

Finding that participation in employee benefit plans was growing substantially and that the economic impact of this trend was "increasingly interstate" in nature, Congress enacted ERISA in 1974 in order to protect the interests of participants and interstate commerce.[3] To that end, ERISA preempts all state law claims "insofar as they may now or hereafter relate to any employee benefit plan described in...[29 U.S.C. § 1003(a)] and not exempt under...[29 U.S.C. § 1003(b)]."[4] A state law is "related to" an employee benefit plan within the meaning of ERISA when it has a "connection or reference to such a plan."[5] State law claims alleging the failure of the insurer to pay the full amount of benefits owed under the policy "relate to" and are, therefore, governed by ERISA.[6] These suits are regarded as "arising under the Constitution, treaties or laws of the United States and shall be removable without regard to the citizenship or residence of the parties."[7]

The LTD Policy provides Hartford with discretionary authority to determine eligibility for benefits and to interpret the LTD Policy. Thus, the standard of review to be applied when reviewing

---

[3] 29 U.S.C. § 1001(a), (b).

[4] 29 U.S.C. § 1144(a).

[5] *Manning v. Hayes*, 212 F.3d 866, 870 (5th Cir. 2006) (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)).

[6] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

[7] 28 U.S.C. § 1441(b); *Taylor*, 481 U.S. at 66-67.

2

Hartford's decision to deny benefits is the arbitrary and capricious/abuse of discretion standard.[8]

When reviewing cases alleging arbitrary and capricious actions resulting in an abuse of discretion, the U.S. Fifth Circuit Court of Appeals will affirm an administrator's decision if it is supported by substantial evidence.[9] A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[10] In addition, if a claimant is "given an opportunity to present facts to the administrator, [the Court's] review of factual determinations is confined to the record available to the administrator."[11]

In determining whether or not an insurer's decision is arbitrary and capricious, the United States Fifth Circuit Court of Appeals has instructed that "a district court must inquire only whether the internal record adequately supports the administrator's decision."[12]

When the claims administrator is also the insurer of the benefits plan at issue, a "sliding scale" of deference is appropriate. This "sliding scale" standard considers the conflict of interest as a factor in assessing the reasonableness of the decision at issue.[13] In applying the abuse of

---

[8] See *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 9948 (1989); *MediTrust Financial Services v. The Sterling Chemicals*, 168 F.3d 211 (5th Cir. 1999); *Pierre v. Connecticut General Life Insurance Co.*, 932 F.2d 1552 (5th Cir. 1991), *cert. denied*, 502 U.S. 973, 112 S.Ct. 453 (1991).

[9] *MediTrust*, 168 F.3d 211, 215 (5th Cir. 1999).

[10] *Id.* citing *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996).

[11] *Id.*, citing *Wildbur v. Arco Chemical Co.*, 974 F.2d 631, 639 (5th Cir. 1992).

[12] See *Gooden v. Provident Life and Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001).

[13] *Vega v. National Life Ins. Servs. Inc.*, 188 F.3d 287, 296; *Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir. 1994).

discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously.[14]

When the administrative record contains substantial evidence in support of the administrator's decision, the court will not upset the decision under the abuse of discretion standard.[15]

*The Policy Terms*

The policy provides the following concerning a disability:

**Disability or Disabled** means:
1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings'
3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

If at the end of the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, but your Current Monthly Earnings are greater than 80% of your Pre-disability Earnings, your Elimination Period will be extended for a total period of 12 months from the original Date of disability, or until such time as your Current Monthly Earnings are less than 80% of your Pre-disability Earnings, whichever occurs first.

Your Disability must be the result of:
1. Accidental bodily injury;
2. Sickness;
3. Mental Illness;
4. Substance Abuse; or
5. Pregnancy.

Your failure to pass a physical examination required to maintain a license to perform

---

[14] *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 540-41 (citing *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465 (5th Cir. 2001); *MediTrust Financial Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211 (5th Cir. 1999) (citing *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994) (quoting *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992)).

[15] *Wade*, 493 F.3d at 538, 540-41.

the duties of Your Occupation, alone, does not mean that you are Disabled.

**Employer** means the Policyholder.

**Essential Duty** means a duty that;
1. is substantial, not incidental;
2. is fundamental or inherent to the occupation; and
3. can not be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.[16]

**The Elimination Period** is the period of time you must be Disabled before benefits become payable. It is the first 182 consecutive day(s) of any one period of Disability.[17]

Thus, under the Long Term Disability Policy, a participant is eligible for long term disability benefits if during the Elimination Period (182 days) and for the next twenty-four (24) months, the individual has an injury or sickness that precludes the participant from performing one or more of the Essential Duties of her own occupation. The Elimination Period in this case is from June 13, 2007 through December 27, 2007, and the twenty-four (24) month Own Occupation period is December 28, 2007 through December 28, 2009.

*Job Description*

According to a "PHYSICAL DEMANDS ANALYSIS," a "bank teller's" job description consists of the following:

> (1) use of a computer, telephone and calculator. Description of average workstation includes a chair.[18]

---

[16] Rec. #000032.

[17] Rec. #000017.

[18] Mrs. Jourdan takes issue with the fact that the job description states that the job station includes a chair. The record contains notes made by a Hartford representative which states that

5

(2) the teller's work schedule is eight (8) hours per day for five (5) days per week.
(3) teller is required to sit one hour at a time, stand one-half (.5) hour at a time, and walk one-half (.5) hour at a time for a total of six (6) hours of sitting, one to two (1-2) hours of standing and one-half (.5) hours of walking (alternate sitting and standing as needed).
(4) the teller must talk person to person and on the phone, be able to hear in person and on the phone and be able to see near and at midrange.
(5) the job can be modified by giving assistance with coin by lifting and/or transferring to and from the vault as needed.
(6) there are no other jobs available with this company that require similar ability but less physical effort.
(7) the task description includes lifting coin from the vault that weighs five (5) to ten (10) pounds for less than a foot at least twice a week, and lifting coin from the teller to the customer that weighs five (5) to ten (10) pounds at least two (2) to three (3) times a day.
(8) other essential job duties include occasional stooping, kneeling, crouching, reaching below waist level and feeling with both hands, frequent reaching at waist/desk level, handling, and fingering with both hands.

*Ms. Jourdan's medical records*

On June 29, 2007, Dr. Allen Richert, plaintiff's treating physician completed a "doctor's statement"[19] at the request of Hartford. Dr. Richert remarked that Mrs. Jourdan would have rheumatoid arthritis for life, would require continuous treatment, and a return to work date was "unknown at this time." In a narrative report dated July 18, 2007, Dr. Richert remarked that Mrs. Jourdan "will have days when she is in less pain and maybe could work, but this would aggravate the Rheumatoid Arthritis and cause more disabling pain later."[20] He also indicated that Mrs. Jourdan

---

the manager of this particular branch informed Hartford that this particular branch does not provide a chair at the work station. However, Mrs. Jourdan requested a chair, but hardly used it. See Rec. #000249-00250.

[19] Rec. #000137.

[20] Rec. #000146.

would be disabled for life due to her diagnoses of rheumatoid arthritis and fibromyalgia.[21] On December 17, 2007, on a form provided by Hartford, Dr. Richert remarked that Ms. Jourdan suffers from rheumatoid arthritis, from which she is unable to work. Dr. Richert spoke with Dr. Fuchs, an Independent Medical Review Examiner, and remarked that the last time Dr. Richert saw Mrs. Jourdan was on January 16, 2008, at which time she was doing poorly. He further indicated that Mrs. Jourdan's severe pain would prevent her from performing sedentary work due to frequent absenteeism due to pain.[22]

On January 29, 2008, a request for information was sent to Dr. Richert, wherein he remarked that Mrs. Jourdan has rheumatoid arthritis, and "is not able to work sit stand or walk consistent [with] bank teller work," [sic] and that "she is restricted by pain."[23] On January 16, 2008, Dr. Richert completed a physical capacities evaluation wherein he remarked that Mrs. Jourdan could sit less than one (1) hour, and that she could not use her hands adequately for fine manipulation or pushing and pulling. Dr. Richert also noted that Mrs. Jourdan could not use her hands for repetitive motion tasks such as writing, typing, assembling, etc.[24] Dr. Richert further remarked that Mrs. Jourdan suffered from fatigue and that there was a reasonable medical basis that would prevent her from working full time, even in a sedentary position.[25] Dr. Richert remarked that Mrs. Jourdan suffered from pain reasonably caused by rheumatoid arthritis to the extent that it would prevent her from working full

---

[21] *Id.*

[22] Rec. # 000311, Hartford Summary Detail Report.

[23] Rec. #000115.

[24] Rec. #000117.

[25] Rec. #000118.

7

time at a sedentary position.[26] Dr. Richert further remarked that the pain would "constitute a significant handicap with sustained attention and concentration would eliminate skilled work tasks."[27] In a letter questionnaire from Dr. Richert dated February 7, 2008, Mrs. Jourdan should sit, stand, or walk for less than one hour; she should lift no more than two (2) pounds; she is unable to reach above shoulder level; and she suffers from fatigue and pain which prevent her from working full time, even in a sedentary position.[28]

On May 9 and 10, 2007, Mrs. Jourdan underwent a function capacity evaluation (FCE) by an occupational therapist. The therapist noted that "the client did not give maximum consistent effort in tests," but that her performance was consistent among FCE items; her performance was consistent between day one and day two; functional limitations were consistent with physical findings of musculoskeletal exam; patient's perceived abilities were consistent with those objectively evaluated in FCE.[29] The therapist remarked that "Mrs. Jourdan appears to push through activities to complete them."[30] The therapist further remarked that Mrs. Jourdan had poor sitting tolerance, poor work tolerance, poor tolerance for left and right-handed grasp, and that she should avoid floor to waist lift, not lift overhead, frequently used items should be located on lower shelves to allow use without lifting overhead, avoid horizontal lifting, avoid pushing or pulling unless wheeled carts with larger wheels are available due to rheumatoid arthritis, avoid right, left and front carrying, avoid forward

---

[26] Rec. #000119.

[27] Rec. #000120.

[28] Rec. #000327, Hartford Summary Detail Report.

[29] Rec. #000122.

[30] Rec. #000123.

8

bending, sitting and standing, avoid rotation, sitting and standing could be tolerated for thirty minutes, with the need to change positions, and she should be allowed frequent breaks to stand and change positions. The therapist summarized that Mrs. Jourdan had poor tolerance for prolonged sitting and standing, reaching overhead, bending forward during work activities and carrying objects, concluding that "she is not a match for the majority of the assumed physical demands of her job."[31]

On June 21, 2007, Dr. Jones, Mrs. Jourdan's treating rheumatologist, remarked that she suffers from rheumatoid arthritis, as well as lower back pain which is worse while sitting. On July 19, 2007, Dr. Jones indicated that Mrs. Jourdan had rheumatoid arthritis, which was active and lower back pain.[32] On January 29, 2008, she remarked that Mrs. Jourdan's knees were giving out and that she was falling more.

Dr. Fayez Shamieh performed an electromyography study on February 6, 2008 and remarked that Mrs. Jourdan suffers from polyneuropathy, bilateral medial neuropathies at the wrists bilaterally, and cervical radiculopathy.[33]

On appeal, Hartford engaged an independent, outside physician, Dr. Albert Fuchs, board certified in internal medicine, to review the medical records of Mrs. Jourdan and conduct an Independent Medical Review. On May 15, 2008, Dr. Fuchs issued a Peer Review Report.[34] Dr. Fuchs reviewed all of the medical records and information submitted to Hartford and spoke with Mrs. Jourdan's primary physicians, Dr. Jones and Dr. Richert. In his report, Dr. Fuchs remarked that Dr.

---

[31] Rec. #000127.

[32] Rec. #000170.

[33] Rec. #000109.

[34] Rec. #000072-000075.

9

Jones had informed him that between flares of her rheumatoid arthritis, Mrs. Jourdan could do sedentary work, but not during flares. He further remarked that Dr. Richert had informed him that Mrs. Jourdan's "severe pain would prevent performance of sedentary work because of frequent absenteeism due to the pain, not because the pain would prevent doing any of the actual job functions."[35]

After reviewing the medical records, Dr. Fuchs concluded that;

> The medical record does not support any functional impairment that would prevent full time sedentary work.
> 
> The medical records support the diagnoses of fibromyalgia, rheumatoid arthritis, hypertension, peripheral neuropathy, carpal tunnel syndrom, and right cervical radiculopathy. Her rheumatoid arthritis as of the most recent progress notes by Dr. Richert and Dr. Jones in January 2008 was poorly controlled and her medications were being adjusted. This manifested by worsening joint pain and stiffness. The claimant be expected to limit walking to 10 minutes at a time and 1 hour all day and to limit lifting, pushing, pulling and carrying to 10 lb. Her fibromyalgia would also be expected to similarly limit lifting, pushing, pulling and carrying. Her peripheral neuropathy, cervical radiculopathy and carpal tunnel syndrome are not documented in the medical record to be causing any functional impairment. No other restrictions are supported by the medical record. Her hypertension is not symptomatic. These restrictions do not prevent full time sedentary work. It is unclear if the claimants condition has changed significantly since 7/13/07 as her most recent follow up with her primary care doctor and her rheumatologist were in January 2008.
> 
> \* \* \*
> 
> Based on the medical records and on my conversation with her attending physicians, I disagree with the restrictions and limitations provided by Dr. Richert.
> 
> Based on my conversation with Dr. Richert, I don't believe he necessarily still has the same opinions he previously stated about the claimant's restrictions and limitations.

---

[35] Rec. #000073.

> There is no reason to believe that her ability to sit is limited by her fibromyalgia or her rheumatoid arthritis.[36]

*Findings of the Court*

Hartford maintains that Dr. Fuchs' opinion is that the medical records did not support a functional impairment that would prevent full time sedentary work, and that Mrs. Jourdan's restrictions as presented, would not prevent her from full time sedentary occupational work. As such, Hartford contends that Mrs. Jourdan was not precluded from performing the duties of her Own Occupation as a Bank Teller during the relevant period of time,[37] and was not eligible for long term disability benefits under the terms of the policy. The court notes that Dr. Fuchs' opinion was made after Hartford originally denied Mrs. Jourdan's claim for long term disability benefits and after she appealed the denial of that claim.

After careful review of the record and the arguments of the parties, the Court concludes that there is no rational connection between the known facts and the decision of the Plan Administrator – Hartford. The FCE indicated that Mrs. Jourdan could not return to her work as a bank teller and remarked that she had poor tolerance for prolonged sitting and standing, reaching overhead, bending forward during work activities and carrying objects.[38] The conclusion was that "she is not a match for the majority of the assumed physical demands of her job."[39] Mrs. Jourdan's treating physician, Dr. Richert, opined that Mrs. Jourdan would be disabled for life due to her diagnoses of rheumatoid

---

[36] Rec.#000073-000075.

[37] The Elimination Period is from June 13, 2007 through December 27, 2007.

[38] Rec. # 000127.

[39] *Id.*

11

arthritis and fibromyalgia,[40] and that she suffered from pain reasonably caused by rheumatoid arthritis to the extent that it would prevent her from working full time, even at a sedentary position.[41] He further opined that she suffered from fatigue for which there is a reasonable medical basis to the extent that it would prevent her from working full time, even in a sedentary position.[42]

One of Mrs. Jourdan's "Essential Duties" of her occupation, per the policy terms, is that she be able to work the "number of hours in your regularly scheduled workweek."[43] Dr. Richert, Dr. Orris and the FCE all indicated that Mrs. Jourdan would not be able to tolerate a full work schedule.

## CONCLUSION

Based on the foregoing, the Court finds that substantial evidence is not present which would support the denial of benefits, and that Hartford arbitrarily and capriciously denied Mrs. Jourdan' claim for long term disability benefits.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22nd day of April, 2009.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[40] Rec. #000146.

[41] Rec. #000119.

[42] Rec. #000118.

[43] Rec. #00032.